| District Court, Denver County, State of Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: September 10, 2020 1:39 PM<br>FILING ID: EF9660B58E9D4<br>CASE NUMBER: 2020CV33120 |
|---|---|
| **Plaintiff(s):**<br><br>TIMOTHY BOSWINKLE and<br><br>MICHAEL GATES, et al.<br><br>v.<br><br>**Defendant:**<br><br>NAVAJO EXPRESS, INC. | ▲COURT USE ONLY▲ |
| Attorney:<br>Andrew H. Turner, Atty. Reg. #: 43869<br>Matthew Fritz-Mauer, Atty. Reg. #: 54334<br>THE KELMAN BUESCHER FIRM<br>600 Grant Street, Suite 450<br>Denver, CO 80203<br>Phone Number: (303) 333-7751<br>Fax Number:    (303) 333-7758<br>E-mail: aturner@laborlawdenver.com<br>           mfritzmauer@laborlawdenver.com | Case Number:<br><br>Division:       Courtroom: |
| **CLASS ACTION COMPLAINT, REQUEST FOR DECLARATORY RELIEF** ||

Plaintiffs Timothy Boswinkle and Michael Gates, for themselves and all others similarly situated, by their undersigned attorneys, bring this action against Navajo Express, Inc. ("Navajo" or "Defendant"), and allege as follows:

## INTRODUCTORY STATEMENT

1. Plaintiffs and the members of the proposed class have been or are working as "Lease-Operators" for Navajo, a Denver-based trucking company that ships perishable and dried goods throughout the United States.

**EXHIBIT C**
Defendant Navajo's
Notice of Removal

2. This action stems from Navajo's violations of the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 *et seq.*; the federal Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq.*; the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-101 *et seq.*; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and from its breaches of contract. Specifically, Navajo (a) has made and continues to make unlawful, deductions from the wages of drivers described in this complaint; (b) has failed to specify driver compensation on the face of relevant leasing agreements; (c) has failed to pay all amounts owed to drivers under applicable contracts; and (d) has failed to specify all charge-back items in the relevant leasing agreements.

3. Plaintiffs, who have been misclassified by Navajo as independent contractors, bring this action – individually and on behalf of the class of truck drivers described below – for declaratory, injunctive, and monetary relief arising out of Navajo's violations of law and breaches of contract.

4. Other current and former truck drivers in the proposed classes are also entitled to recover unpaid wages and damages for the reasons alleged in this complaint.

## THE PARTIES

5. Plaintiff Timothy Boswinkle has worked for Navajo since January 2019. From January to March of 2019, Plaintiff worked as a "Company Driver" for Navajo, transporting goods pursuant to contracts between Navajo and third-party shippers. As a Company Driver, Mr. Boswinkle was properly classified as an employee by Defendant. Beginning in March 2019, Mr. Boswinkle became one of Navajo's "Lease-Operators" (hereafter referred to as the "Misclassified Truckers"), and – like all such drivers – has been

    misclassified as an independent contractor since January 1, 2020. Mr. Boswinkle regularly performs work for Navajo in Colorado.

6. Plaintiff Michael Gates has worked for Navajo since November 2017. Like Mr. Boswinkle, Mr. Gates also began his career with Navajo as a Company Driver. Beginning on or about June of 2018, Mr. Gates became one of Navajo's Misclassified Truckers, and – like all such drivers – has been misclassified as an independent contractor since January 1, 2020. Mr. Gates regularly performs work for Navajo in Colorado.

7. Defendant Navajo is a corporation that at all relevant times has been domiciled in Colorado, where it conducts extensive business. Navajo was incorporated in 1981 in Colorado, and its principal place of business is located at 1400 W 64th Avenue, Denver, Colorado 80221. Navajo is a motor carrier registered with the Secretary of Transportation and authorized by the Department of Transportation ("DOT") to transport dry and refrigerated goods throughout the contiguous United States. Upon information and belief, Navajo employs upwards of 80 Misclassified Truckers, as well as an unknown number of Company Drivers. As a Colorado-based business, Navajo is subject to the CWCA and the CCPA; as a DOT-authorized motor carrier, it is subject to federal Truth-in-Leasing regulations.

8. Navajo and Plaintiffs have been signatories to two relevant leasing and operating agreements (together, the "Leases"): a former lease that stopped being effective in December of 2019 (the "2019 Lease"), and a lease that is currently in effect (the "2020 Lease").  Navajo has executed these uniform, enforceable lease contracts with all Misclassified Truckers in the alleged plaintiff class.

## JURISDICTION AND VENUE

9. Jurisdiction is conferred upon this Court by Article VI, Section 9 of the Constitution of the State of Colorado.

10. This court has jurisdiction over this matter (a) pursuant to C.R.S. § 13-1-124(1)(a), as these allegations arise pursuant to business the parties have transacted in Colorado, and because (b) Navajo is domiciled in Colorado and (c) the parties have consented to this court's jurisdiction.

11. Venue is proper in this court under C.R.C.P. 98 because (a) Defendant Navajo is based in Denver, Colorado, and (b) the events at issue substantially occurred in Denver, Colorado. Venue is also proper because parties have contractually agreed that all claims must be filed in courts serving Denver County.

12. This case is not subject to the simplified procedures for court actions under C.R.C.P. 16.1 because this civil action is a class action. C.R.C.P. 16.1(b)(1).

## STATEMENT OF FACTS

13. Between January 2019 and the present, and as relevant to this dispute, Defendants have consistently maintained two fleets of drivers: Company Drivers, who are classified as employees of Navajo, and Misclassified Truckers, who are classified as independent contractors.

14. The job duties and working conditions of Company Drivers and Misclassified Truckers are substantially the same.

15. Mr. Boswinkle and Mr. Gates have worked as both Company Drivers and Misclassified Truckers. Plaintiffs and all members of the alleged class have worked as Misclassified Truckers for Navajo in both 2019 and 2020.

16. Misclassified Truckers work for Navajo pursuant to leasing agreements, which detail the terms and conditions of the parties' relationship.

17. Under both the 2019 Lease and the 2020 Lease, Misclassified Truckers lease a truck from Navajo and pay a weekly fee. They haul shipments of goods to and from various locations around the country for Navajo.

18. Until December 7, 2019, Navajo and its Misclassified Truckers were signatories to the 2019 Lease. Under Appendix B of that contract, Misclassified Truckers were entitled to receive "65.0 % of the amount billed by [Navajo], less any agent fee, for any shipment(s) handled by [the Lease-Operator's] equipment and drivers."

19. On or about November 5, 2019, Navajo informed its Misclassified Truckers that it was terminating the 2019 Lease effective on or about December 6, 2019. Misclassified Truckers were required to sign a new contract, the 2020 Lease, or else find a new job.

20. Plaintiffs and a group of Misclassified Truckers (the "Holdover Operators") signed the 2020 Lease and continued to work for Navajo.

21. Appendix B of the 2020 Lease provides the compensation scheme for Navajo's Misclassified Truckers, including Plaintiffs. Drivers earn 65% of the "loaded line haul" of each contract, which includes revenue billed by Navajo for "linehaul transportation, hourly work, accessorial services, detention, and all other services, fuel surcharges, and other charges, costs, and surcharges for a particular shipment," less any named and applicable deductions. 2020 Lease, App'x B.

22. Around November 25, 2019, Defendants informed Misclassified Truckers, including Plaintiffs, that they had discovered an accounting or payroll "glitch" which had caused overpayments to Misclassified Truckers in 2019; Misclassified Truckers were therefore indebted to Navajo and required to reimburse the company. Specifically, Defendants claim they overpaid Misclassified Truckers by reimbursing them too much for three kinds of fees: "lumper fees," which are associated with loading and unloading cargo; "stop charges," which apply when Misclassified Truckers must make multiple stops along a route; and "fuel surcharges," which are charged to cover fluctuating fuel costs.

23. By way of example, Navajo informed Plaintiff Timothy Boswinkle that he had been overpaid by more than $12,200, and therefore owed Navajo that amount.

24. Also as an example, Navajo informed Plaintiff Michael Gates that he had been overpaid by more than $4,500, and therefore owed Navajo that amount.

25. Mr. Boswinkle repeatedly requested documentation justifying this debt. Navajo did not provide any until mid-April, 2020.

26. Mr. Gates also repeatedly requested documentation justifying this debt. Navajo has not yet provided any.

27. Upon information and belief, other Misclassified Truckers also attempted to obtain documentation regarding their alleged debts, but Navajo refused to provide such documentation, either at all or for several months.

28. Navajo miscalculated Plaintiffs' alleged debts. Upon information and belief, Navajo miscalculated the alleged debts of other Holdover Operators.

29. During the relevant time period, Plaintiffs and other Misclassified Truckers have been paid once per week via "Settlement Checks."

30. The Settlement Checks provide information about gross earnings and applied deductions for a given time period.

31. On or about December 7, 2019, Navajo began to include a "Revenue Charge Back" deduction on the Settlement Checks of Plaintiffs and other Holdover Operators.

32. Defendants apply the Revenue Charge Back on a weekly basis to Settlement Checks to recover Holdover Operators' alleged overpayment debts over a period of time.

33. Upon information and belief, Defendants intend to continue applying the Revenue Charge Back to all Holdover Operators.

34. For example, Plaintiff Timothy Boswinkle's Revenue Charge Back is $118.17 per week. To date, Navajo has applied this deduction to reduce Mr. Boswinkle's wages by more than $4,200.

35. For example, Plaintiff Michael Gates' Revenue Charge Back is $43.95 per week. To date, Navajo has applied this deduction to reduce Mr. Gates' wages by more than $1,500.

36. Plaintiffs and similarly situated Misclassified Truckers never authorized Navajo to impose the Revenue Charge Back from their wages, nor did they have an opportunity to challenge or halt this practice.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs Timothy Boswinkle and Michael Gates are current Misclassified Truckers working for Navajo. Plaintiffs bring counts I, II, III, IV, and VI on behalf of themselves and a class of similarly-situated Misclassified Truckers (the "Class"). Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the Class as

> All drivers who worked as "Lease-Operators" for Navajo under both the 2019 Lease and the 2020 Lease and who have had the Revenue Charge Back deducted from Settlement Checks at least once.

38. Because Navajo began deducting the Revenue Charge Back in early December of 2019, the relevant time period dates back to December 1, 2019.

39. Plaintiffs and members of the Class are similarly situated because they all share or shared similar job titles, job skills, and job responsibilities. They worked pursuant to identical or substantially identical leases and have been subjected to the same unlawful behavior.

40. The Class is so numerous that joinder of all members would be impracticable. Upon information and belief, more than 60 people have signed and performed work pursuant to the Leases.

41. There are questions of law and fact common to the class. Plaintiffs and members of the Class have all signed identical or substantively identical contracts, and have been subjected to the unlawful acts of Defendant alleged here.

42. Because Plaintiffs and members of the Class have all signed identical or substantively identical contracts, performed the same jobs, and been subjected to the same unlawful treatment, the claims of Plaintiffs are typical of the claims of the Class.

43. Plaintiffs will fairly and adequately protect the interests of the Class.

44. A class action is superior to individual litigation because it will efficiently and effectively resolve the legal issues shared by members of the Class. Because of this, Class members have low interest in individually controlling the prosecution of separate actions.

45. Upon information and belief, no litigation has been filed concerning the issues alleged herein.

46. Concentrating this litigation in Denver State Court is desirable because a) the 2020 Lease requires it, and b) Defendant is domiciled in Colorado and located in Denver.

47. It is unlikely that the management of this class action will cause difficulties sufficient to mitigate against class certification.

48. Plaintiffs and the Class seek relief in the form of unpaid compensation, damages, declaratory relief, injunctive relief, and attorneys' fees and costs. C.R.S. §§ 6-1-113, 8-4-105, 110; 49 USC § 14704(e). As such, Plaintiffs seek certification of the Class pursuant to Colorado Rule of Civil Procedure 23(b)(3).

## COUNT I

## THE TRUTH-IN-LEASING REGULATIONS

(49 C.F.R. § 376.12)

49. These counts are asserted by Plaintiffs on behalf of themselves and the alleged Class.

50. Plaintiffs' claims under these counts are representative of the Class as a whole.

51. Alternatively, Plaintiffs bring these counts as individuals.

52. Plaintiffs incorporate all allegations set forth in the foregoing paragraphs as though fully alleged herein.

53. As a DOT-authorized motor carrier, Navajo is required to enter into written leases with its Misclassified Truckers. 49 C.F.R. § 376.11.

54. Plaintiffs and members of the Class are authorized carriers under the Truth-In-Leasing regulations. 49 C.F.R. § 376.2(a). As authorized carriers, they are entitled to written leases that follow the requirements of the Truth-In-Leasing regulations. *See* 49 C.F.R. § 376.12.

55. The 2020 Lease is subject to the requirements of the Truth-in-Leasing regulations.

56. Leases governed by the Truth-in-Leasing regulations must clearly specify all "charge-back items," or deductions that may be imposed against driver Settlements, as well as how those deductions are to be computed. 49 C.F.R. § 376.12(h).

57. In violation of 49 C.F.R. § 376.12(h), the 2020 Lease does not specify the existence of or means of calculating the Revenue Charge Back deduction.

58. Plaintiffs and the members of the Class have been directly harmed by this practice in the form of reduced compensation. Navajo's violation of 49 C.F.R. § 376.12(h) has also denied Plaintiffs and members of the Class the information they require to understand the extent of and justification for their underpayment.

59. Plaintiff and the members of the Class are entitled to recover their unpaid compensation and reasonable attorneys' fees. 49 U.S.C. §§ 14704(a)(2), (e).

## COUNT II

## THE TRUTH-IN-LEASING REGULATIONS

(49 C.F.R. § 376.12)

60. These counts are asserted by Plaintiffs on behalf of themselves and the alleged Class.

61. Plaintiffs' claims under these counts are representative of the Class as a whole.

62. Alternatively, Plaintiffs bring these counts as individuals.

63. Plaintiffs incorporate all allegations set forth in the foregoing paragraphs as though fully alleged herein.

64. Written leases regulated by the Truth-In-Leasing regulations must clearly state the amount of driver compensation. 49 C.F.R. § 376.12(d).

65. Because the 2020 Lease does not specify the existence of and means of calculating the Revenue Charge Back, it does not clearly state driver compensation.

66. This violation has caused Plaintiffs and members of the Class actual harm by inducing them to enter contracts that did not provide accurate information about compensation and by denying them the ability to fully understand their compensation and the extent of and causes for the underpayment of their earnings.

67. For example, Plaintiff Timothy Boswinkle's Revenue Charge Back is $118.17 per week. To date, Navajo has applied this deduction to reduce Mr. Boswinkle's wages by more than $4,200.

68. For example, Plaintiff Michael Gates' Revenue Charge Back is $43.95 per week. To date, Navajo has applied this deduction to reduce Mr. Gates' wages by more than $1,500.

69. Plaintiff and the members of the Class are entitled to recover their unpaid compensation and reasonable attorneys' fees. 49 U.S.C. §§ 14704(a)(2), (e).

## COUNT III

## PLEA FOR DECLARATORY RELIEF REGARDING THE 2019 LEASE

(C.R.S. § 13-51-101 *et seq.*)

70. Plaintiffs bring this count on behalf of themselves and the alleged Class.

71. Alternatively, Plaintiffs bring this count as individuals.

72. Plaintiff incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

73. Under the 2019 Lease, Misclassified Truckers were entitled to be paid at least 65% of the value of all fuel surcharges, lumper fees, and stop charges billed by Navajo to its customers.

74. Defendants' calculation of alleged debt that forms the basis of the Revenue Charge Back assumes that Plaintiffs and members of the Class were contractually entitled to 0% of the value of all fuel surcharges, lumper fees, and stop charges billed by Navajo to its customers.

75. By applying the Revenue Charge Back deduction, Navajo has violated and continues to violate Class members' contractual entitlement to at least 65% of all fuel surcharges, lumper fees, and stop charges billed by Navajo to its customers.

76. Plaintiffs seek a declaratory judgment that under the 2019 Lease, Plaintiff and members of the Class were contractually entitled to receive at least 65% of all fuel surcharges, lumper fees, and stop charges that Navajo billed to its customers.

## COUNT IV

### BREACH OF CONTRACT REGARDING THE 2020 LEASE

77. Plaintiffs bring this count on behalf of themselves and the alleged Class.

78. Alternatively, Plaintiffs bring this count as individuals.

79. Plaintiffs incorporate all allegations set forth in the foregoing paragraphs as though fully alleged herein.

80. Defendant breached and continues to breach the 2020 Lease by failing to make free and clear payment of all amounts due to Misclassified Truckers in the Plaintiff Class. contract.

81. For example, Defendant has imposed the Revenue Charge Back on members of the Plaintiff Class. The 2020 Lease does not in any way reference the Revenue Charge Back. Misclassified Truckers in the Class did not authorize the Revenue Charge Back.

82. Upon information and belief, Navajo has miscalculated the Revenue Charge Back, thereby inflating the amounts allegedly owed by Plaintiffs and Misclassified Truckers in the Class. For example, with regard to Mr. Boswinkle, Navajo's records which form the basis of his alleged debt state that he was reimbursed $1,860 for lumper fees for Shipment Order #2386253. Mr. Boswinkle, however, was only reimbursed approximately $310 for lumper fees for that order.

83. Upon information and belief, Navajo has not based its payments of percentages due to the Plaintiff Class under the 2020 Lease upon the full amounts billed to customers for the loaded line haul, as that term is defined by the 2020 Lease.

84. This breach of contract has caused Plaintiffs and Class members actual damages in the form of reduced earnings.

## COUNT V

## COLORADO CONSUMER PROTECTION ACT

(C.R.S. § 6-1-101 *et seq.*)

85. Plaintiffs bring this count on behalf of themselves. Plaintiffs do not allege this count as a class action count.

86. Plaintiffs incorporate all allegations set forth in the preceding paragraphs as though fully alleged herein.

87. The Colorado Consumer Protection Act ("CCPA") regulates the behavior of all "persons" in Colorado. Defendant is a "person" under the CCPA. C.R.S. § 6-1-102(6).

88. The CCPA prohibits deceptive trade practices. As relevant here, persons may not, in the course of their "business, vocation, or occupation," "knowingly or recklessly engage[] in

     any unfair, unconscionable, deceptive, deliberately misleading, false or fraudulent act or practice." C.R.S. § 6-1-105(kkk).

89. The CCPA entitles "any person" who "in the course of the person's business or occupation, is injured" by another's "deceptive trade practice." C.R.S. § 6-1-113(1)(c).

90. Plaintiffs are "persons" within the meaning of the CCPA.

91. In the course of its business, Defendant has engaged in deceptive and unfair trade practices in violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101 *et seq.* Specifically, since November of 2019, Defendant has intentionally failed to disclose the basis of Misclassified Truckers' alleged overpayment debts or provide any supporting documentation justifying these alleged debts. Navajo unilaterally decided to collect on this alleged debt through unlawful deductions and without presenting Plaintiffs any opportunity to understand or contest the alleged debt or Revenue Charge Back deduction. The Revenue Charge Back deduction is not detailed in the 2020 Lease, but serves to reduce Misclassified Truckers' weekly earnings. *See id.* § 6-1-105(kkk).

92. As an example, Plaintiff Boswinkle attempted to obtain documentation regarding his alleged debt beginning in November of 2019. Defendant refused to provide him with such information until April of 2020, approximately five months after Navajo first began to impose the Revenue Charge Back. Prior to April of 2020, Defendants informed Mr. Boswinkle that his alleged debt was based on lumper fees only; only after obtaining this documentation did Mr. Boswinkle discover that Defendants were also charging him for alleged overpayments regarding stop charges and fuel surcharges.

93. As another example, Plaintiff Michael Gates attempted to obtain documentation regarding his alleged debt beginning on or about December 2019. Defendants have refused to provide him with any such information.

94. Plaintiff Timothy Boswinkle has discovered errors in the calculation of his alleged overpayment debt. Contrary to Defendants' assertion that Plaintiff was overpaid by $12,200, he was not.

95. Upon information and belief, Navajo has systematically miscalculated Class members' alleged debts by misapplying the terms of the 2019 Lease and through faulty recordkeeping and/or analysis.

96. Upon information and belief, Navajo has not based its payments of percentages due to the Plaintiffs under the 2020 Lease upon the full amounts billed to customers for the loaded line haul, as that term is defined by the 2020 Lease.

97. Defendants have failed to pay Plaintiffs all of the money that they have been legally and contractually entitled to.

98. These practices have caused Plaintiffs actual harm in the form of reduced earnings.

99. Defendants performed these deceptive and unfair practices in bad faith. *See* C.R.S. § 6-1-113(2)(2.3).

100. Plaintiffs are entitled to recover treble damages, costs, and attorneys' fees. *Id.* § 6-1-113(2)(b).

## COUNT VI

## COLORADO WAGE CLAIM ACT

(C.R.S. §§ 8-4-101 *et seq.*)

101. Plaintiffs assert this count on behalf of themselves and the alleged Class.

102. Plaintiff incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

103. Plaintiffs' claims are representative of the Class as a whole.

104. Alternatively, Plaintiffs bring this count as individuals.

105. Colorado law applies to the claims of all members of the Class because the 2020 Lease includes a choice-of-law provision requiring the application of Colorado law to any and all disputes between Misclassified Truckers and Navajo.

106. Defendant was the "employer" of Plaintiffs and members of the Class as that term is defined under the CWCA because it employed Plaintiffs in Colorado. *See* C.R.S. § 8-4-101(6).

107. On January 1, 2020, the definition of "employee" in the Colorado Wage Claim Act ("CWCA") changed pursuant to legislative action.

108. Plaintiffs and members of the Class are employees under Colorado law because they labor under the control and direction of Navajo and perform work that is the primary work of Navajo. *See* C.R.S. § 8-4-101(5).

109. Navajo has made significant capital investments in the trucking operations performed by Misclassified Truckers. When Misclassified Truckers perform work for Navajo, they do so in trucks and trailers owned by Navajo, and pursuant to contracts that Navajo has negotiated with third party customers Navajo obtains through investment in marketing its product, transportation services, which the Plaintiffs provide.

110. Navajo exerts control over the Plaintiff Class in a variety of ways. Misclassified Truckers transport goods under Navajo's Operating Authority, using Navajo's federally-

registered Motor Carrier number. Because they operate under Navajo's authority, members of the Plaintiff Class haul goods exclusively or nearly-exclusively for Navajo. Both in practice and by contract, Misclassified Truckers are restricted from operating for other motor carriers.

111.    Navajo imposes "liquidated damages" against Misclassified Truckers who receive "roadside inspection violations."

112.    Navajo electronically tracks the movements of members of the Plaintiff Class, and requires that Misclassified Truckers have the appropriate type of electronic tracking device that Navajo uses for this purpose.

113.    Navajo limits the speed its trucks may travel. Misclassified Truckers cannot exceed this speed, nor change the speed settings without approval from Navajo upper management.

114.    The Plaintiff Class transports goods for Navajo on an at-will basis.

115.    Since January 1, 2020, Plaintiffs and the other members of the Class have been misclassified as independent contractors. Since that date, the CWCA has applied to Plaintiffs and the other members of the Class.

116.    The Settlement Checks that Misclassified Truckers receive from Navajo are "wages" under Colorado law. *See* C.R.S. § 8-4-101(14)(a).

117.    The CWCA prohibits employers from making deductions from employees' wages without written authorization or legal justification. C.R.S. § 8-4-105.

118.    Defendants violated C.R.S. § 8-4-105 by making deductions from the Plaintiffs' and alleged Class' wages without written authorization or legal justification.

119. Plaintiffs and members of the Class are entitled to recover their unpaid wages and attorneys' fees.

## COUNT VII

## FAIR LABOR STANDARDS ACT

(29 U.S.C. § 201 *et seq.*)

120. Plaintiff Michael Gates asserts this count on behalf of himself.

121. Plaintiff incorporates all allegations set forth in the foregoing paragraphs as though fully alleged herein.

122. Navajo is an "employer" under the Fair Labor Standards Act ("FLSA") because it engages in interstate commerce, has revenue of more than $500,000 per year, and employs employees.

123. Plaintiff Gates is an "employee" under the FLSA because he labors under the control and direction of Navajo and performs work that is the primary work of Navajo. *See* 29 U.S.C. 203(e).

124. The FLSA requires that employees must be paid at least $7.25 per hour for each hour they work. 29 U.S.C. § 206(a).

125. Deductions that are primarily for the benefit or convenience of the employer may not reduce an employee's earnings below the required minimum wage. During the last three years, however, Navajo has at times paid Mr. Gates less than minimum wage through the application of deductions that were primarily for Defendant's benefit.

126. As an example, on February 25, 2020, Navajo paid Plaintiff Michael Gates a Settlement Check for $0, although Mr. Gates had performed work for Navajo during the time period covered by this Settlement.

127.    As another example, on February 18, 2020, Navajo paid Plaintiff Michael Gates a Settlement Check for $0, although Mr. Gates had performed work for Navajo during the time period covered by this Settlement.

128.    As a result of this violation, Mr. Gates has been denied his lawfully-earned wages.

129.    Mr. Gates is entitled to unpaid minimum wages, liquidated damages, and attorneys' fees. 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

130.    Plaintiffs respectfully request an Order from this Court:

   a. Certifying the Class under Colorado Rule of Civil Procedure 23(b)(3), naming Plaintiffs the class representatives, and naming Plaintiffs' counsel class counsel;

   b. Granting judgment in favor of Plaintiffs and against all Defendants;

   c. Awarding Plaintiffs and the members of the Class their damages under state and federal law;

   d. Awarding Plaintiffs and the members of the Class their costs;

   e. Awarding Plaintiffs and the members of the Class their attorneys' fees;

   f. Awarding Plaintiffs and the members of the Class declaratory relief;

   g. Awarding Plaintiffs and the members of the Class treble damages;

   h. Awarding Plaintiffs and the members of the Class all other appropriate equitable relief;

   i. Awarding Plaintiffs and the members of the Class pre-judgment and post-judgment interest, when allowable by law;

   j. Granting such other relief as this Court deems just and proper; and

      k.  Punitive, exemplary, and liquidated damages as allowed by law;

Dated: September 10, 2020                  Respectfully submitted,

                                                         By:   */s/Andrew Turner*
                                                         Andrew Turner, # 43869
                                                         Matthew Fritz-Mauer, # 54334
                                                         THE KELMAN BUESCHER FIRM, P.C.
                                                         600 Grant Street, Suite 825
                                                         Denver, Colorado 80203
                                                         (303) 333-7751 (telephone)
                                                         (303) 333-7758 (fax)
                                                         aturner@laborlawdenver.com
                                                         mfritzmauer@laborlawdenver.com
                                                         *Attorneys for Plaintiffs*

Plaintiffs' Address:
716 Princeton Highway
Honea Path, SC  29654