| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>COURT ADDRESS: 1437 Bannock St, Denver, CO 80202 | |
| DATE FILED: December 17, 2020 5:46 PM<br>FILING ID: E4F208DD773CB<br>CASE NUMBER: 2020CV33112 | |
| **Plaintiffs:**<br><br>TIMOTHY BOSWINKLE AND<br>MICHAEL GATES, ET AL.<br><br>     v.<br><br>**Defendants:**<br><br>NAVAJO EXPRESS, INC. | ▲COURT USE ONLY ▲ |
| Andrew Turner, # 43869<br>Matthew Fritz-Mauer, # 54334<br>THE KELMAN BUESCHER FIRM, P.C.<br>600 Grant Street, Suite 825<br>Denver, Colorado 80203<br>(303) 333-7751 (telephone)<br>(303) 333-7758 (fax)<br>aturner@laborlawdenver.com<br>mfritzmauer@laborlawdenver.com<br><br>David H. Seligman, # 49394<br>Brianne Power, # 53730<br>TOWARDS JUSTICE<br>1410 High St., #300<br>Denver, Colorado 80218<br>(720) 248-8426 (telephone)<br>david@towardsjustice.org<br>brianne@towardsjustice.org<br><br>*Attorneys for Plaintiffs* | Case Number: 2020CV33112<br><br>Courtroom:   215 |
| **MOTION FOR JUDGMENT ON THE PLEADINGS** | |

**EXHIBIT 1**

*Plaintiffs' Motion for Judgment on the Pleadings*

Plaintiffs Timothy Boswinkle and Michael Gates drive trucks for Defendant Navajo, a large, Colorado-based trucking company. In 2019, Navajo required Plaintiffs and its other workers to sign a standardized form contract that includes two provisions designed to preclude workers like Plaintiffs from asserting their employment rights against Navajo. Those terms include (1) a provision preventing workers from participating, in any capacity, in any class, collective, or other consolidated action against Navajo (the "Class Waiver"), Compl. ¶ 24; and (2) a term requiring truck drivers to pay Navajo's costs and attorney's fees in any action in which they allege but fail to establish that they are properly classified as employees, rather than independent contractors (the "Loser Pays"), Compl. ¶ 35.

Plaintiffs have filed a separate suit against Navajo seeking to recover unpaid wages. *Boswinkle v. Navajo Express, Inc.,* 2020CV33120.  That action raises questions of employee status.  Navajo has removed that suit to federal court. *Boswinkle v. Navajo Express, Inc.*, 1:20-03325-NYW (D. Colo.). In this action, however, Plaintiffs only seek a declaration that the Class Action Waiver and Loser Pays provisions are unenforceable as a matter of Colorado law.

Plaintiffs adopted this two-suit approach purely out of necessity. The purpose and effect of Defendant's Loser Pays provision is to preclude legal claims through the threat of bankruptcy. Long-distance truckers are not wealthy.  They cannot afford to pay their own attorneys' hourly rates, much less the costs and fees that a large, national corporation like Navajo will garner. Because Plaintiffs do not in this case allege that they are employees as opposed to independent contractors, the Loser Pays provision does not apply to this litigation. By bringing this separate action to have that contract provision declared unenforceable, Plaintiffs seek a declaration of their rights without incurring the risks associated with seeking adjudication of their employee status.  Defendant has moved to stay this declaratory action while stating an identical

counterclaim in the federal court minimum wage action (in which Plaintiffs *do* allege worker misclassification).  The point is to expose Plaintiffs to the Loser Pays provision for fees incurred in answering these declaratory questions, which *do not* otherwise ask whether Plaintiffs were misclassified as independent contractors, into the federal case which does.

While there remains considerable dispute between the parties about the nature of their relationship, there is no dispute about the language of the contract that Navajo required Plaintiffs to sign as a condition of their work. With this motion, Plaintiffs move the Court for judgment on the pleadings because the contractual provisions at issue are unenforceable as a matter of law and none of the facts relevant to that determination are disputed. *In re Parental Responsibilities of I.M.*, 410 P.3d 488, 491 (Colo. App. 2013).[1]

"In considering a motion for judgment on the pleadings pursuant to C.R.C.P. 12(c), the trial court must construe the allegations in the pleadings strictly against the movant, must consider the allegations of the opposing parties' pleadings as true, and should not grant the motion unless the pleadings them-selves show that the matter can be determined on the pleadings."  *Redd Iron, Inc. v. Intl. Sales & Serv. Corp.*, 200 P.3d 1133, 1135 (Colo. Ct. App. 2008).  Judgment on the pleadings is appropriate, however, where the Court determines "in light of the controlling law and undisputed facts, that the matter could finally be resolved at that stage".  *City & County of Denver v. Qwest Corp.*, 18 P.3d 748, 754 (Colo. 2001).  Whether the two contract provisions at issue conflict, on their face, with Colorado public policy is a pure question of law independent of the facts.  Judgement on the pleadings is appropriate.

---

[1] Plaintiffs have conferred in good faith with Defendant regarding this Motion, and Defendant opposes the relief requested.  C.RC.P. 121, § 1-15.

## A.  The Class Waiver and Loser Pays Provisions Are Void as Against Public Policy

Colorado law is clear that "a contract is unenforceable by either party if it is against public policy." *Calvert v. Mayberry*, 440 P.3d 424, 430 (Colo. 2019). This principle is for the protection not just of the parties to a contract but "for the protection of the public." *Russell v. Courier Printing & Pub. Co.*, 95 P. 936, 938 (1908). For the reasons explained here, both the Class Waiver and the Loser Pays provisions are void as a matter of Colorado public policy.

### 1.   *The Class Waiver Is Void Because it Conflicts with State Policy Ensuring the Adequate Enforcement of Worker Protections*

Since the U.S. Supreme Court's decision in *AT&T v. Concepcion*, 563 US 333 (2011), which concluded that the Federal Arbitration Act preempts state laws invalidating arbitration agreements that contain class action waivers, class action waivers—almost always nestled within arbitration provisions—have become ubiquitous in employment contracts.[2] The consequences of *Concepcion* have been dramatic for the enforcement of workplace protections against wage theft, misclassification, and discrimination.[3]

In this case, however, the Court is not bound by *Concepcion* because the class action waiver is not part of an arbitration agreement. Thus, the Waiver does not receive the protection of the Federal Arbitration Act, and the policies animating *Concepcion* and its progeny are not at issue here. Namely, because the Class Waiver is not tied to the "efficient, streamlined

---

[2] Alexander J.S. Colvin, *The growing use of mandatory arbitration,* Economic Policy Institute, Apr. 6, 2018, https://www.epi.org/publication/the-growing-use-of-mandatory-arbitration-access-to-the-courts-is-now-barred-for-more-than-60-million-american-workers/.

[3] *See, e.g.*, Jessica Silver Greenberg & Robert Gebeloff, *Arbitration Everywhere, Stacking the Deck of Justice*, N.Y. Times (Oct. 31, 2015), https://nyti.ms/374fA7w; Hugh Baran, Nat'l Employment Proj., *Forced Arbitration Enabled Employers to Steal $12.6 Billion from Workers in Low-Paid Jobs in 2019* (Feb. 12, 2020), https://bit.ly/3gB3NRd.

procedures" purportedly inherent in arbitration, *Concepcion*, 563 U.S. at 344, the purported "liberal federal policy in favor of arbitration," *id.* at 346, is inapplicable.

Colorado courts have not had occasion to address the enforceability of class action waivers as a matter of state law before *Concepcion* or in its aftermath. This case, therefore, asks this Court to rule on a blank slate. In addressing, in the first instance, the question of the enforceability of class action waivers as a matter of Colorado law, this Court should begin with the analysis of courts across the country that have repeatedly held such waivers in worker or consumer contracts to be unenforceable as a matter of state law. Before *Concepcion*, courts applying the law in Alabama, Arizona, California, Florida, Georgia, Illinois, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New Mexico, Ohio, Oregon, Pennsylvania, Washington, West Virginia, and Wisconsin had refused to enforce class action waivers like the one at issue here.[4]

---

[4] *See, e.g.*, *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010); *Jones v. DirecTV, Inc.*, 381 Fed. Appx. 895 (11th Cir. 2010); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) (Or. law); *Lowden v. T-Mobile, USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008); *Davis v. Chase Bank USA*, 299 Fed. Appx. 662 (9th Cir. 2008*); Skirchak v. Dynamics Research Corp.*, 508 F.3d 49 (1st Cir. 2007); *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007) (Ga. law); *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) (Cal. law); *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir. 2005) (Cal. law); *Tamayo v. Brainstorm USA*, 154 Fed. Appx. 564 (9th Cir. 2005); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) (Cal. law); *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003) (Cal. law); *In re Checking Account Overdraft Litig.*, 718 F. Supp. 2d 1352 (S.D. Fla. 2010); *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018 (N.D. Cal. 2009); *Coneff v. AT&T Corp.*, 620 F. Supp. 2d 1248 (W.D. Wash. 2009), rev'd, 673 F.3d 1155 (9th Cir. 2012); *Hall v. AT&T Mobility L.L.C.*, 608 F. Supp. 2d 592 (D.N.J. 2009); *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361 (S.D. Fla. 2009) (Del. law); *IJL Dominicana S.A. v. It's Just Lunch Int'l, L.L.C.*, 2009 WL 305187 (C.D. Cal. Feb. 6, 2009); *In re Apple & AT & TM Antitrust Litig.,* 596 F. Supp. 2d 1288 (N.D. Cal. 2008) (Cal., N.Y. & Wash. law); *McGinnis v. T-Mobile USA, Inc.,* 2008 WL 2858492 (W.D. Wash. July 22, 2008) (striking down class action ban embedded in arbitration clause with respect to California and Minnesota residents, but not with respect to Georgia resident); *Oestreicher v. Alienware Corp.,* 502 F. Supp. 2d 1061 (N.D. Cal. 2007), aff'd, 322 Fed. Appx. 489 (9th Cir. 2009); *Brazil v. Dell Inc.*, 2007 WL 2255296 (N.D. Cal. Aug. 3, 2007*); Cooper v. QC Fin. Serv., Inc.*, 503 F. Supp. 2d 1266, 1290 (D. Ariz. 2007); Riensche v.

The decisions of those state courts turned on analyses of the important policies underlying the class action device, especially in cases involving workers or consumers. As the Massachusetts Supreme Judicial Court explained, class action waivers conflict with at least three important public policies underlying the class action device: (1) the opportunity class actions provide to consumers or workers to aggregate relatively small claims that they might be unable to pursue on an individual basis—in many cases, after all, "aggregation of small claims is likely the only realistic option for pursuing a claim," *Feeney*, 908 N.E.2d at 763; (2) the deterrence of wrongdoing effected by the threat of class litigation on behalf of large groups of workers or consumers who may be unlikely to all pursue individual claims, *id.*; and (3) the policy of allowing absent class members, who may be too fearful to come forward on their own, to recover

---

Cingular Wireless, L.L.C., 2006 WL 3827477 (W.D. Wash. Dec. 27, 2006); *Doerhoff v. Gen. Growth Properties, Inc.*, 2006 WL 3210502, at *6 (W.D. Mo. Nov. 6, 2006); *Winig v. Cingular Wireless, L.L.C.*, 2006 WL 2766007 (N.D. Cal. Sept. 27, 2006); *Wong v. T-Mobile U.S.A.*, 2006 WL 2042512 (E.D. Mich. July 20, 2006); *Sprague v. Household Int'l*, 473 F. Supp. 2d 966 (W.D. Mo. 2005); *Luna v. Household Fin. Corp., III*, 236 F. Supp. 2d 1166, 1178–1179 (W.D. Wash. 2002); *Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002); *ACORN v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160 (N.D. Cal. 2002); *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1105 (W.D. Mich. 2000); *Leonard v. Terminix Int'l Co., Ltd. P'ship*, 854 So. 2d 529 (Ala. 2002); *Gentry v. Super. Ct.*, 165 P.3d 556, 571 (Cal. 2007); *Discover Bank v. Super. Ct.*, 113 P.3d 1100, 1108–1109 (Cal. 2005); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 576 (Fla. Dist. Ct. App. 1999); *Reuter v. Davis*, 2006 WL 3743016, at *4 (Fla. Cir. Ct. Dec. 12, 2006); *Kinkel v. Cingular Wireless, L.L.C.*, 857 N.E.2d 250, 275 (Ill. 2006); *Schnuerle v. Insight Communications Co.*, 2010 WL 5129850 (Ky. Dec. 16, 2010), aff'd in part, rev'd in part, 376 S.W.3d 561 (Ky. 2011); *Feeney v. Dell Inc.*, 908 N.E.2d 753 (Mass. 2009); *Brewer v. Mo. Title Loans, Inc.*, 323 S.W.3d 18 (Mo. 2010); *Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88, 100 (N.J. 2006); Fiser v. Dell Computer Corp., 188 P.3d 1215 (N.M. 2008); *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 373 (N.C. 2008); *Schwartz v. Alltel Corp.*, 2006 WL 2243649, at *6 (Ohio Ct. App. June 29, 2006); *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1183 (Ohio Ct. App. 2004); *Vasquez-Lopez v. Beneficial Or., Inc.*, 152 P.3d 940, 948 (Or. Ct. App. 2007); *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 885 (Pa. Super. Ct. 2006); *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 n.4 (Wash. 2007); *McKee v. AT&T Corp.*, 191 P.3d 845 (Wash. 2008); *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 278–279 (W. Va. 2002); *Cottonwood Fin., Ltd. v. Estes*, 784 N.W.2d 726 (Wis. Ct. App. 2010), vacated, 806 N.W.2d 637 (Wis. 2011); *Coady v. Cross Country Bank*, 729 N.W.2d 732 (Wis. Ct. App. 2007).

damages through litigation pursued by a class representative, *id.* On that basis, the Massachusetts Supreme Judicial Court concluded that class action waivers were unenforceable as violating public policy. *Id.* at 767.

Colorado embraces those same policies. In promulgating Colorado Rule of Civil Procedure 23, Colorado effectively adopted Rule 23 of the Federal Rules of Civil Procedure. *Bruce W. Higley, D.D.S., M.S., P.A. Defined Ben. Annuity Plan v. Kidder, Peabody & Co.*, 920 P.2d 884, 889 (Colo. App. 1996). That rule was rooted in a policy designed to ensure access to justice for individuals who may be too timid or not have the resources to file an individual suit. As famed American legal scholar Benjamin Kaplan—who was also one of the architects of Rule 23—explained, the modern class action device was designed to allow absent class members to benefit from litigation pursued on their behalf because requiring them to take an affirmative step to join the litigation would result "in freezing out the claims of people–especially small claims held by small people–who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (i)*, 81 Harv. L. Rev. 356, 397-98 (1967).

These considerations weigh especially heavily in the workplace context. The class action device is critical in helping vulnerable, low-wage workers  overcome fear of retaliation to enforce workplace rights, where low-wages inherently involve modest individual claims. *See* David Weil, *Workers Shouldn't Have to Sign Away Their Rights to Class Action Lawsuits*, Harv. Bus. R., June 5, 2018, https://bit.ly/3n7zy78 (former U.S. Department of Labor official noting that a "critical obstacle towards exercising rights is a fear of retaliation. If a worker believes that their employer will put them on less desirable shifts, reduce their future pay, or curtail their

promotion opportunities, they will become less likely to act on a belief their rights are violated. Even worse, if they believe they might lose their job, or in the case of workers with immigration status issues, be threatened with deportation, they may choose silence even in the face of significant acts of discrimination, sexual harassment, health and safety risk, or wage theft.").

Colorado public policy also recognizes that the critical importance of the class action device extends far beyond the benefits that class actions provide to class representatives and absent class members. First, as the Colorado Supreme Court has remarked, "[t]he basic purpose of a class action is to eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit." *Mountain States Tel. & Tel. Co. v. Dist. Court, City & Cty. of Denver*, 778 P.2d 667, 671 (Colo. 1989). By forcing its workers to sign class action waivers, Navajo has not only undermined its workers' ability to vindicate their rights under the labor standards laws—it has also risked subjecting the courts to the inefficiencies that flow from having to a adjudicate a multiplicity of similar suits. Colorado has adopted the class action device to minimize those inefficiencies; Navajo should not be permitted to bypass that procedure, imposing the risk of substantial costs on the Court, because Navajo would rather avoid class actions.

Second, class actions are critical to enforcing Colorado law. The State does not have sufficient resources to enforce labor standards protections in every case. Instead, Colorado—like other states and the federal government—leans heavily on workers' ability to *privately* enforce state law through civil litigation for the benefit of the workers protected by those laws, the law-

abiding competitors of the businesses who break them,[5] and the rule of law generally. *See Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1647 (2018) (Ginsburg, *J.* dissenting) ("Because of their limited resources, however, government agencies must rely on private parties to take a lead role in enforcing wage and hours laws."). Class action waivers, however, substantially undermine the ability of workers to bring enforcement actions on their own. As Justice Ruth Bader Ginsburg noted in dissent in *Epic Systems*—a case in which the Supreme Court held that class action waivers within arbitration agreements were enforceable notwithstanding Section 7 of the National Labor Relations Act, 29 U.S.C. § 157—the "inevitable result of today's decision will be the underenforcement of federal and state statutes designed to advance the well-being of vulnerable workers." *Epic Sys.*, 138 S. Ct. at 1646 (Ginsburg., *J.* dissenting).

Class actions are critical to the efficient administration and pursuit of justice and the enforcement of the law. They provide a vehicle for plaintiffs with small claims and little power to nevertheless access judicial relief. *Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 US 591, 617 (1997) (class actions allow parties to aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor")). And they allow the State to enforce the law and the courts to adjudicate disputes efficiently. Given these important purposes, Colorado has a "policy of favoring the maintenance of class actions." *Id.* (citing *Farmers Ins. Exch. v. Benzing*, 206 P.3d 812, 817-18 (Colo. 2009)).

---

[5] *See* Charlie Berger, Co-Founder Denver Beer Company, *Justice Gorsuch, Stand with Employers Who Respect The Law*, Huffington Post (Sept. 30, 2017), https://www.huffpost.com/entry/justice-gorsuch-stand-with-employers-who-respect-the-law_b_59d010b5e4b06791bb10ef0c (Denver small-business owner arguing that protecting enforceability of class action waivers in employment contracts would "give an unfair advantage to big corporations that cut corners and break the law").

*Concepcion* and follow-on cases like *Epic Systems* require enforcement of class action waivers embedded in arbitration clauses no matter how much those provisions may offend state public policy. But because this waiver is not part of an arbitration provision, this Court is not bound by those cases here. Instead, consistent with the abundant pre-*Concepcion* case law and the interests of the State of Colorado in protecting vulnerable workers, preserving the efficient administration of justice, and facilitating the enforcement of its own law, this Court should conclude that class action waivers in agreements between workers and their employers are void as a matter of public policy.

2.   ***The Loser Pays Provision Is Void Because it Conflicts with State Law Regarding Fee-Shifting in Workers' Rights Cases***

The Loser Pays provision also conflicts with Colorado public policy and the policy underlying state and federal employment laws. While under Colorado law, "a fee-shifting provision need not be mutual to be enforceable," *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008), "a fee-shifting provision, like any contractual provision, may not be enforced as written if doing so would violate public policy," *Klein v. Tiburon Dev. LLC*, 405 P.3d 470, 475 (Colo. App. 2017).

The Loser Pays provision violates the public policy of Colorado because it directly conflicts with state law encouraging workers to come forward to raise disputes about their misclassification as independent contractors rather than employees. Misclassification causes the state to miss out on tax revenue and prevents workers from accessing benefits and protections including unemployment insurance, workers' compensation, protection under the occupational safety and health laws, overtime and minimum wage, or any of the other benefits that flow from

employee status.[6] It also imposes a higher tax burden on workers, who are responsible for paying the entirety of FICA taxes, which are normally shared between employer and employee.[7] Colorado has declared on several occasions, that misclassification of employees as independent contractors is one of the most pressing concerns confronting Colorado's labor market. *See, e.g.*, Colo. Rev. Stat. § 8-72-114 ("Misclassification of employees as independent contractors in violation of the 'Colorado Employment Security Act' and, in particular, the provisions of article 70 of this title defining the employment relationship, may pose a significant problem in this state and leads to underpayment of employment taxes and premiums that employers are obligated to pay the state for covered employment."); Colorado Dep't of Labor, *Task Force Report Pursuant to Executive Order B 2018-3*, Nov. 30, 2018, https://bit.ly/3mfO636.

For this reason, Colorado law *encourages* workers to come forward to report misclassification. The Colorado Department of Labor and Employment solicits complaints regarding the misclassification of workers and states that it will fine employers up to $5,000 per misclassified employee as a first offense and up to $25,000 per employee for subsequent offenses. *Misclassification*, Colo. Dep't of Labor, https://cdle.colorado.gov/misclassification. Defendant's Loser-Pays provision would shift its attorney's fees onto workers who initiate any such governmental investigation.

---

[6] U.S. Dep't of Labor, Wage & Hour Div., *Misclassification of Employees as Independent Contractors*, https://www.dol.gov/agencies/whd/flsa/misclassification ("Misclassified employees often are denied access to critical benefits and protections they are entitled to by law, such as the minimum wage, overtime compensation, family and medical leave, unemployment insurance, and safe workplaces. Employee misclassification generates substantial losses to the federal government and state governments in the form of lower tax revenues, as well as to state unemployment insurance and workers' compensation funds.").

[7] Ceilidh Gao, *1099'S AND W-2'S: IF YOUR BOSS BROKE THE LAW, IT MIGHT MAKE YOUR TAXES HIGHER*, Nat'l Employment L. Proj., Apr. 13, 2018, https://www.nelp.org/blog/1099s-w-2s-boss-broke-law-might-make-taxes-higher/.

When misclassification results in the underpayment of wages, Colorado law also encourages workers to bring suit to enforce the law by allowing workers who bring suit and recover at least the amount that they allege they were underpaid to recover their attorney's fees. Colo. Rev. Stat. § 8-4-110 ("If, in any such action in which the employee seeks to recover any amount of wages or compensation, the employee recovers a sum greater than the amount tendered by the employer, the court may award the employee reasonable costs and attorney fees incurred in such action.").

That same provision allows employers to recover fees where the employee recovers less than what he or she initially demanded. *But* the statute expressly exempts from this reverse fee shifting scheme any case in which the "claimant . . . is found to be an independent contractor and not an employee." Colo. Rev. Stat. § 8-4-110(1.5).  In other words, if a misclassified worker alleges underpayment of wages and prevails, he or she may recover attorney's fees, but if the worker loses the misclassification argument, Colorado law expressly exempts him or her from a reverse fee shift to the alleged employer. By including Colo. Rev. Stat. § 8-4-110(1.5). The statute is designed to encourage workers to come forward with reports of misclassification, without fear that they will be on the hook for their alleged employer's fees if they lose the argument.

Similarly, when misclassified workers assert that they were subject to illegal discrimination or a hostile work environment prohibited under the employment laws, they may recover their reasonable attorney's fees, whereas defendants in such actions may only recover fees if the plaintiff's claims were "frivolous, groundless, or vexatious." Colo. Rev. Stat. § 24-34-405(5). This fee-shifting provision is designed to encourage workers to come forward to assert their rights under the anti-discrimination laws. *Newman v. Piggie Park Enters., Inc*., 390 U.S.

400, 401-02 (1968) (noting that Congress enacted a fee-shifting provision to help individuals advance important policy goals by pursuing private remedies). But a Navajo worker subject to the contract at issue here would be substantially impeded from asserting any rights under the anti-discrimination laws based on the Loser Pays provision.

While Colorado law encourages workers to come forward to report misclassification—including by limiting the circumstances in which a worker alleging misclassification would be forced to pay the fees of his or her putative employer—Navajo's Loser Pays provision does the opposite. It subverts Colorado's policy of encouraging workers to vindicate their rights by threatening ruinous fees against those who dare to question whether they are misclassified. The scope of the Loser Pays provision is breathtaking. It does not even require Navajo to be a "prevailing" party to recover its fees and costs. Rather, according to the terms of the contract, Navajo is entitled to fees and costs in any case in which a worker alleges employee status "but which ultimately, upon completion of all appeals or the running of all applicable appeal periods, fail to result in any final judicial or administrative decision holding the allegation to be true." Compl. ¶ 35. According to the terms of that contract, for example, if a worker like one of the Plaintiffs were to make a complaint to the Colorado Department of Labor and Employment's Unemployment Insurance Division arguing that he or she was a misclassified employee entitled to unemployment insurance benefits or the federal Occupational Safety and Health Administration arguing that he or she was entitled to a safe workplace, that worker would risk exposing him or herself to all of Navajo's attorney's fees and costs associated with defending itself against such a proceeding. In fact, even if a worker alleging misclassification reached a settlement agreement with Navajo, Navajo could thereafter invoke the Loser Pays provision because there would not have been a final judicial or administrative decision finding

misclassification. Navajo's contract doesn't just turn the normal fee-shifting standard on its head; it corrupts the normal process and warps the rules that the Colorado legislature has carefully created with the specific purpose of entirely precluding any claims in any forum whatsoever through the threat of broad and prohibitive consequences.

Clearly, a private contract could not require indemnification for fees incurred if one party's tip should generate a criminal prosecution of the other party. Richard A. Lord, 8 *Williston on Contracts* (4th ed. 1990) *§ 15:8* ("[A]ll bargains tending to stifle criminal prosecution, whether by suppressing investigation of crime or by deterring citizens from their public duty of assisting in the detection or punishment of crime, are void as against public policy."); *See also Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 854 (10th Cir. 1972)(public policy voids contractual nondisclosure agreement).  Defendant's contract purports to achieve the same in the context of Colorado's labor laws.  However, Colorado voids private indemnification clauses which violate its public policy.  *See e.g., Cooper v. The Aspen Skiing Co.*, 48 P.3d 1229, 1231 (Colo. 2002) *superseded by* C.R.S. § 13-22-107.

Colorado has adopted a policy of encouraging workers to come forward to report misclassification and vindicate their rights under the employment laws. Navajo's Loser Pays provision conflicts with that policy. For these reasons, this Court should conclude that the Loser Pays provision is unenforceable as a matter of public policy. *See, e.g.*, *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1176 (D. Colo. 2016); *Hernandez v. Colonial Grocers, Inc*., 124 So. 3d 408, 409 (Fla. Dist. Ct. App. 2013); *Gaither v. Wall & Assocs., Inc*., 79 N.E.3d 620, 631 (Oh. Ct. App. 2017) (concluding that loser pays provision violated Ohio public policy because it attempted to "rewrite the rule for attorney fees" set out in Ohio statute (internal quotation marks omitted)).

**B.  The Class Action Waiver and Loser Pays Provision Are Unconscionable**

In the alternative to concluding that the provisions at issue here are unenforceable as a matter of public policy, this Court should deem them unconscionable and unenforceable as a matter of law.

Unconscionability is a question of law. *Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 836 (Colo. App. 1988). To be sure, the unconscionability analysis often turns on evidence "in the record of some overreaching on the part of one of the parties." *Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 836 (Colo. App. 1988). But Colorado courts have never suggested that such "overreaching" must be evident in the facts or circumstances surrounding contract formation—facts not before the Court at this stage of the dispute. Instead, contracts "will be found unconscionable" when their **terms** "defeat the reasonable expectations of the parties." *Id.*

For all the reasons described above, the Class Waiver and Loser Pays Provision are unconscionable as a matter of law. They each deprive Plaintiffs of critical protections that allow for the vindication of their rights under state law. And read together they stack the deck against Plaintiffs in a manner that would easily defeat the reasonable expectations of the parties. Whereas absent the contract, Plaintiffs would be able to assert their claims through a class action, which would permit them to pool resources with a group of similarly situated workers and would be required to pay Navajo's fees only in extraordinary circumstances, the language here strips Plaintiffs of both those protections. Richard A. Lord, 8 Williston on Contracts § 18:7 (4th ed. 1998) ("[W]here there is a strong public policy against a particular practice, a contract or clause inimical to that policy will likely be declared unconscionable and unenforceable unless the policy is clearly outweighed by some legitimate interest in favor of the individual benefited by the provision.").  For all of the foregoing reasons, Plaintiff's Motion should be granted.

Respectfully submitted,


By:   */s/ Andrew H. Turner*
Andrew H. Turner, # 43869
Matthew Fritz-Mauer, # 54334
THE KELMAN BUESCHER FIRM, P.C.
600 Grant Street, Suite 825
Denver, Colorado 80203
(303) 333-7751 (telephone)
(303) 333-7758 (fax)
aturner@laborlawdenver.com
mfritzmauer@laborlawdenver.com

David H. Seligman, # 49394
Brianne Power, # 53730
TOWARDS JUSTICE
1410 High St., #300
Denver, Colorado 80218
(720) 248-8426 (telephone)
david@towardsjustice.org
brianne@towardsjustice.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I filed a true and correct copy of the foregoing document through the *Colorado Courts E-Filing System*, which effected service upon all counsel of record.


December 17, 2020:

*/s/ Andrew H. Turner*
***Counsel for Plaintiffs***