IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-3325-WJM-NYW

TIMOTHY BOSWINKLE, and
MICHAEL GATES, *et al.*, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

NAVAJO EXPRESS, INC.,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM AND TO STAY PROCEEDINGS**

---

    Before the Court is Plaintiffs Timothy Boswinkle ("Boswinkle") and Michael Gates's ("Gates"), individually and on behalf of all others similarly situated, ("jointly "Plaintiffs"), Motion to Dismiss Defendant Navajo Express, Inc.'s ("Defendant" or "Navajo") Counterclaim and to Stay Proceedings ("Motion"). (ECF No. 16.)  Defendant filed a response in opposition (ECF No. 24), and Plaintiffs replied (ECF No. 26).[1]  For the following reasons, the Motion is granted in part and denied in part.

## I. BACKGROUND AND PROCEDURAL HISTORY

    This civil action is one of two civil actions initiated by Plaintiffs, "Lease-Operators" who haul shipments of goods across the country, against Defendant, a Denver-based

---

[1] The Court strongly cautions both parties against using lengthy, single-spaced footnotes to exceed the page limits set in the undersigned's Revised Practice Standards.  (*See, e.g.*, ECF No. 24 at 8 n.3; ECF No. 26 at 5 n.3.)  The Court will not hesitate to strike future briefs that violate the page limits vis-à-vis the footnotes.

trucking company that ships perishable and dry goods throughout the United States. (ECF No. 5 ¶¶ 1, 5–7, 15–17; ECF No. 16 at 1–2; ECF No. 16-1.)  Plaintiffs initiated both civil actions in the District Court for the County of Denver (the "Denver District Court")—the first filed on or about September 9, 2020, requesting declaratory relief (the "Declaratory Action"), and the second filed on or about September 10, 2020, requesting individual and class-wide relief for Defendant's alleged violations of the Colorado Wage Claim Act and related federal statutes as well as other state law causes of action (the "Wage Action").  (ECF No. 1; ECF No. 5; ECF No. 16 at 1–2; ECF No. 16-1.)

The Declaratory Action requests that the Court declare illegal and unenforceable two provisions in the leasing and operating agreement (the "2020 Contract") entered between Plaintiffs and Navajo.  (ECF No. 16-1.)  Those two provisions provide: (1) that all Lease-Operators are independent contractors, not employees, of Navajo and "agree to defend, indemnify, and hold harmless [Navajo] from all reasonable attorneys' fees and litigation expenses [Navajo] incurs in defending against any suits, actions, or administrative proceedings" brought by Lease-Operators in unsuccessfully challenging their classification as independent contractors (the "Loser Pays Provision"); and (2) that all Lease-Operators waive their right to initiate, join, remain in, or otherwise participate in any class, collective, consolidated, or representative action(s) brought against Navajo, including those brought under federal and state law or the Fair Labor Standards Act (the "Class Waiver Provision").  (ECF No. 16-1 ¶¶ 4–5, 24–25, 35–36.)  The Declaratory Action remains pending, and the Denver District Court recently denied Navajo's request to stay the Declaratory Action in favor of the Wage Action and denied Plaintiffs' motion for judgment on the pleadings.  (ECF No. 26-1; ECF No. 28-1.)

The Wage Action alleges that Defendant previously designated Plaintiffs as "Company Drivers" and classified them as employees of Defendant. (ECF No. 5 ¶¶ 5–6, 13–17.) But in 2019, Defendant required Plaintiffs to sign the 2020 Contract that designated Plaintiffs as Lease-Operators and reclassified them as independent contractors, subject to new pay structures. (*See id.* at 5–6, 13–21.) Further, Defendant allegedly informed Plaintiffs (and other Lease-Operators) that due to a "payroll glitch" Plaintiffs had purportedly been overpaid, and as a result Plaintiffs would now be required to reimburse Defendant for the overpayments, with Defendant making deductions from Lease-Operators' weekly paychecks. (*See id.* ¶¶ 22–36.)

Based on the reclassification of Plaintiffs (and others similarly situated) and the weekly paycheck reductions, Plaintiffs initiated the Wage Action and assert individual and potential class and collective claims for violations of the Truth-in-Leasing regulations, 49 C.F.R. § 376.12, ("Counts I and II"); declaratory relief regarding the 2019 lease under Colorado Revised Statutes §§ 13-51-101, *et seq.*, ("Count III"); breach of contract as to the 2020 lease ("Count IV"); violations of the Colorado Consumer Protection Act, Colorado Revised Statutes §§ 6-1-101, *et seq.*, ("Count V"); violations of the Colorado Wage Claim Act, Colorado Revised Statutes §§ 8-4-101, *et seq.*, ("Count VI"); as well as an individual claim by Gates for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, ("Count VII"). (*See* ECF No. 5.) Defendant removed the Wage Action to the United States District Court for the District of Colorado pursuant to 28 U.S.C. §§ 1331 and 1367 on November 6, 2020. (ECF No. 1.)

In its Answer to the Wage Action Complaint, the operative pleading in this civil action, Defendant asserts a counterclaim against Plaintiffs for declaratory judgment that:

(1) the 2020 Contract, which includes the Loser Pays Provision and Class Waiver Provision, is valid and enforceable; (2) the 2020 Contract prohibits Plaintiffs from representing a class in the Wage Action; (3) the 2020 Contract entitles Defendant to recover its costs and fees in the Wage Action should Plaintiffs fail to demonstrate they are misclassified as independent contractors; and (4) any additional relief deemed just and proper.  (ECF No. 10 at 40–43.)

On December 18, 2020, Plaintiffs filed the instant Motion, arguing that the Court should dismiss Defendant's counterclaim under the *Brillhart*/*Mhoon* doctrine because the counterclaim is a "mirror image" of the claim being litigated in the Declaratory Action in the Denver District Court, and thus the best procedure is to allow the Declaratory Action to proceed without federal court intervention.  (ECF No. 16 at 5–12.)  *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942); *State Farm Fire and Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994).  Relatedly, Plaintiffs request that the Court stay this civil action (the Wage Action) pending the Denver District Court's disposition of the Declaratory Action.  (*Id.* at 12–15.)  Defendant opposes the Motion, arguing that *Brillhart*/*Mhoon* does not warrant dismissal of Defendant's counterclaim, and that a stay is not warranted because the specific claims in this Wage Action will proceed regardless of what comes of the Declaratory Action or the request to dismiss Defendant's counterclaim.  (ECF No. 24.)

The undersigned referred that portion of the Motion requesting a stay to United States Magistrate Judge Nina Y. Wang.  (ECF No. 25.)  On January 28, 2021, Judge Wang issued an order granting a stay of proceedings pending the undersigned's disposition of the motion to dismiss portion of the Motion.  (*Id.* at 9.)  Thus, the Court

4

now considers whether to dismiss Defendant's counterclaim and whether to stay this action pending resolution of the Declaratory Action in state court.

## II. ANALYSIS

### A. Motion to Dismiss Defendant's Counterclaim

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ." 28 U.S.C. § 2201(a). The Court "is not obliged to entertain every justiciable declaratory claim brought before it." *Mhoon*, 31 F.3d at 982.

Accordingly, the Tenth Circuit has explained that the *Brillhart/Mhoon* doctrine provides the district court with discretion under the Declaratory Judgment Act to decline to declare the rights of litigants in federal court when a similar state court action exists, as articulated in *Brillhart*, 316 U.S. at 494–95, with the five factors articulated in *Mhoon*, 31 F.3d at 983, guiding the district court's discretion. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1180–83 (10th Cir. 2002).

The factors a court should consider when determining whether to exercise jurisdiction over a declaratory judgment claim include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon*, 31 F.3d at 983.

The Court has carefully considered all of the *Mhoon* factors but only discusses them here to the extent necessary to rule on that portion of the Motion requesting dismissal of the counterclaim.  It is clear that Defendant's counterclaim involves identical issues as those pending before the Denver District Court in the Declaratory Action.  Denver District Court Judge J. Eric Elliff emphasized as much in his order denying Defendant's motion to stay the Declaratory Action, stating:

> I am satisfied, based on my review of the motion, briefs, and case file, that I should exercise my discretion by not staying this case pending resolution of the related federal case.  Not only was [the Declaratory Action] first filed, it raises threshold declaratory issues of state law on which the [Wage Action] seems to depend.  Moreover, the federal case itself began as a state case and was removed to federal court by Defendant.  That removal, contrary to Defendant's argument, did not in my judgment change the state-law-based nature of those threshold issues.  Moreover, as a practical matter, it seems to me more likely that these threshold state law issues will be addressed sooner in this Court than in federal court.

*Boswinkle v. Navajo Express, Inc.*, Case No. 2020CV33112 (Denver Dist. Ct. Feb. 11, 2021).  Based on Judge Elliff's observations and the parties' explanations of the overlap in state law issues in the Declaratory Action and the counterclaim, Court agrees that resolution of the Declaratory Action will resolve at least the issues of Colorado law raised in the counterclaim.

However, what is less clear is whether the Declaratory Action will resolve the issues of federal law raised by Defendant.  In its response, Defendant emphasizes that in the Wage Action, Plaintiffs have asserted putative class claims under federal law, including the Federal Leasing Regulations, as well as misclassification claims under the Fair Labor Standards Act.  (ECF No. 24 at 9.)  Defendant argues that "Courts assessing

the validity of class waivers in the context of federal statutory claims consider the federal statute's text, purpose, and underlying legislative history." (*Id.* (citing *Green v. U.S. Xpress Enters., Inc.*, 434 F. Supp. 3d 633, 643–44 (E.D. Tenn. 2020); *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015)).) Under these circumstances, Defendant asserts that "whether the class waiver may be enforced against Plaintiffs' putative class Federal Leasing Regulations claims turns on the text of, and public policy underlying, those regulations, 49 C.F.R. Part 376; the federal statute authorizing a private right of actions for injuries caused by violations of the regulations, 49 U.S.C. § 14704; and Federal Rule of Civil Procedure 23." (*Id.*) According to Defendant, those questions necessarily involve federal law and public policy, not the public policy of the State of Colorado. (*Id.*)

While in their reply Plaintiffs attempt to construe Defendant's argument as merely an effort to recast its counterclaim as primarily involving federal law, Plaintiffs do not grapple with the underlying issue of whether the Declaratory Action will resolve these potential federal law issues. (ECF No. 26 at 6–7.) Instead, they pivot and argue that the Declaratory Action *will* determine whether the Loser Pays provision is void and unenforceable, as it is explicitly governed by Colorado law. (*Id.* at 6.) That may be, but it does not address Defendant's point—that while the Declaratory Action encompasses the Colorado law issues, it may not address the separate federal issues that remain in this case.

Given the foregoing, while the Declaratory Action will settle *some* of the controversy, it appears as though it may not settle *all* of it.[2] At this stage of the litigation,

---

[2] The Court also notes that Plaintiffs state in their Motion that the outcome of the Declaratory Action will affect what claims remain in *this* action. (ECF No. 16 at 14 ("Although

the Court finds that this factor precludes dismissing the counterclaim, which will resolve all remaining federal law issues, at this time.

The Court has considered the remaining *Mhoon* factors and concludes that a stay of the Wage Action pending the Denver District Court's resolution of the Declaratory Action will alleviate any potential issues in this case regarding procedural fencing, the purported "race to res judicata," and any friction between the federal and state court systems. *See Mhoon*, 31 F.3d at 983. The Court will consider the Denver District Court's findings in the Declaratory Action as claim-preclusive in the Wage Action to the extent relevant and applicable. As such, this Court will only address any remaining issues of federal law pertaining to the counterclaim, if and when that time comes.³

Accordingly, that portion of the Motion seeking dismissal of the counterclaim is denied.

B.      **Motion to Stay This Action Pending Resolution of the Declaratory Action**

Courts have the inherent power to stay proceedings to manage their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The decision whether to stay a case rests firmly within the sound discretion of a court.

---

Plaintiffs believe the Class Waiver and Loser Pays provisions are unlawful, if the Denver District Court rules otherwise, Plaintiffs may reconsider pursuing some of the claims in the Wage Action.").)

³ The Court observes that these complex issues are not fully fleshed out in the parties' briefs, and should this case proceed, the parties are on notice that they must clearly and thoroughly develop these arguments, citing relevant Tenth Circuit authority.

*United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003).

Given this broad power, a District Court may order a stay of a federal suit in favor of another proceeding, even if the two are not identical. *See Landis*, 299 U.S. at 254; *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (quoting *Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)). In fact, "[t]his rule . . . does not require that the issues in such [other] proceedings are necessarily controlling of the action before the court." *Lockyer*, 398 F.3d at 1111 (quoting *Leyva*, 593 F.2d at 864).

In deciding whether to enter a stay, courts consider "(1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship." *Hart v. Connected Wireless*, 2019 WL 861341, at *2 (D. Utah Feb. 22, 2019) (citing *Evergreen Holdings, Inc. v. Sequoia Glob., Inc.*, 2008 WL 4723008, at *2 (W.D. Okla. 2008)).

Here, considering these factors, the Court easily finds that a stay is warranted. First, a stay would promote judicial economy. As Judge Elliff explained, his rulings in the Declaratory Action will involve threshold issues grounded in Colorado law on which the federal action seems to depend. While this Court is capable of deciding those issues, it makes no sense for both courts to consider the same issues, particularly when the Denver District Court will address the issues sooner than this Court. This approach maximizes the use of judicial resources. Regarding the second factor, a stay will avoid confusion and inconsistent results for the same reasons.

9

Finally, despite Defendant's arguments, the Court is not persuaded that a stay will unduly prejudice Defendant. Defendant argues that "a stay would permit Plaintiffs to hold over Navajo the specter of litigation and allow Plaintiffs' potential damages to accrue against Navajo." (ECF No. 24 at 15.) Judge Wang addressed the same argument in her order granting a stay pending resolution of this Motion, finding that "[a]lthough Navajo has an interest in proceeding expeditiously with its counterclaim, that interest is lessened by the fact that the Declaratory Action remains pending and briefing on Plaintiffs' Motion for Judgment on the Pleadings [in the Declaratory Action] has already commenced." (ECF No. 27 at 6.) On this basis, Judge Wang was "not convinced" that Defendant would suffer any prejudice by a stay of this case. (*Id.*)

The Court finds this reasoning continues to remain accurate. (*Id.*) In fact, soon after the Motion became ripe, Judge Elliff denied Plaintiffs' Motion for Judgment on the Pleadings, and the Declaratory Action has thus proceeded apace. (*See* ECF No. 28-1 (order denying Plaintiffs' Motion for Judgment on the Pleadings in Denver District Court).) Under these circumstances, a stay of the Wage Action is warranted.

Therefore, that portion of the Motion requesting a stay of the federal action pending resolution of the Declaratory Action will be granted.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion to Dismiss Defendant's Counterclaim and to Stay Proceedings (ECF No. 16) is GRANTED to the extent that this case will be stayed pending resolution of the Declaratory Action, and is DENIED to the extent that Plaintiffs request dismissal of Defendant's counterclaim;

2. This action is STAYED; and

3. The Clerk shall ADMINISTRATIVELY CLOSE this case subject to reopening for good cause shown **after the conclusion of the Declaratory Action in Denver District Court**.

Dated this 7th day of September, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge